UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
v.                              )       No.:   3:10-CR-160-TAV-HBG
                                )
SANDRA KINCAID,                 )
RANDY KINCAID,                  )
WENDI HENRY, and                )
DUSTIN MORGAN,                  )
                                )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on the Motion by the Defendant Dustin

Morgan for Judgment of Acquittal, or in the Alternative for a New Trial [Doc. 194], the

Motion by Wendi Henry for Judgment of Acquittal or in the Alternative for a New Trial

[Doc. 195], the Motion for Judgment of Acquittal filed by Randy Kincaid [Doc. 197], and

the Motion for Judgment of Acquittal or, in the Alternative, for a New Trial filed by

Sandra Kincaid [Doc. 206].  The government responded to each motion in opposition

[Docs. 202–04, 208], and defendant Dustin Morgan replied [Doc. 205].  The Court has

reviewed all of the filings and considered the arguments of the parties in light of the

relevant and controlling law.  For the reasons that follow, each motion will be denied.

## I.    Background

The four defendants, Sandra Kincaid, Randy Kincaid, Wendi Henry, and Dustin

Morgan, were charged in count one of the superseding indictment with conspiracy to

distribute and possess with intent to distribute controlled substances, including oxycodone, oxymorphone, morphine, zolpidem, and alprazolam, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C), and 841(b)(2). Count two charged Randy Kincaid with knowingly possessing a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, as set forth in count one, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Count three charged Dustin Morgan with the same crime with which Randy Kincaid was charged in count two. Count four charged Sandra and Randy Kincaid with violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2, that is, aided and abetted by one another, knowingly or intentionally, and without authority, possessing with intent to distribute controlled substances, including oxycodone and morphine. Count five charged Randy Kincaid with knowingly possessing a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, as set forth in count four, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

In addition, Sandra and Randy Kincaid were charged with offenses relating to the income generated by Breakthrough Pain Therapy Center ("Breakthrough"). Count six charged Sandra and Randy Kincaid with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Counts seven through twelve charged Randy Kincaid with knowingly, and for the purpose of evading the reporting requirements of section 31 U.S.C. § 5313(a), causing or attempting to cause a domestic financial institution to fail to file a report required under 31 U.S.C. § 5313(a), in violation of 31 U.S.C. §§ 5324(a)(1) and 5324(d). Counts thirteen through twenty-seven charged Randy Kincaid with

2

knowingly, and for the purpose of evading the reporting requirements of section 31 U.S.C. § 5313(a), structuring, assisting in structuring, or attempting to structure and assist in structuring, transactions with one or more domestic financial institutions, in violation of 31 U.S.C. §§ 5324(a)(3) and 5324(d).

In October 2013, the defendants proceeded to a jury trial [*See* Docs. 170–78, 182–93]. At the close of the government's case-in-chief, each of the defendants, through counsel, moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, all of which the Court denied. The jury returned a verdict on October 30, 2013, finding the defendants guilty on all counts [Doc. 185]. The defendants now assert several grounds for relief, which will be addressed in turn.

## II. Analysis

### A. Standards of Review

A Rule 29(c) motion is a challenge to the sufficiency of the evidence, raised following a jury verdict or discharge. *See* Fed. R. Crim. P. 29(c).[1] When reviewing an insufficiency of the evidence claim, a court must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In undertaking this analysis, the Court can neither independently weigh the

---

[1]The defendants moved for judgments of acquittal at the close of the government's proof, pursuant to Federal Rule of Criminal Procedure 29(a). The Court denied the motions, and thus, the instant motions are renewed motions for judgment of acquittal pursuant to Rule 29(c). *See* Fed. R. Crim. P. 29(a), (c).

evidence, nor judge the credibility of the witnesses who testified at trial. *See United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996), *cert. denied sub nom. Parker v. United States*, 519 U.S. 1134 (1997). After a review of the evidence, a court may conclude that a conviction is supported by sufficient evidence even though the circumstantial evidence does not "'remove every reasonable hypothesis except that of guilt.'" *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (quoting *United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991) (per curiam)). In making this evaluation, the sufficiency of the evidence must be viewed in terms of the entirety of the record. *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). Circumstantial evidence standing alone may sustain a conviction so long as the totality of the evidence is substantial enough to establish guilt beyond a reasonable doubt. *Id.*

Rule 33 of the Federal Rules of Criminal Procedure provides that, on motion of a defendant, the Court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for a new trial under Rule 33(a) "may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). Generally, a motion for a new trial under Rule 33(a) should be granted only "in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Id.* (citation omitted). In considering a Rule 33(a) challenge to a conviction based on the weight of the evidence, a court can "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. It has often been said that . . . [the judge]

4

sits as a thirteenth juror." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988) (internal quotation omitted).

Thus, while Rule 29(c) and Rule 33(a) deal with similar issues, the two rules are governed by different standards of review. On a motion for a judgment of acquittal, pursuant to Rule 29(c), a court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. On a motion for new trial pursuant to Rule 33(a), however, the power of a court is much broader because a court may weigh the evidence and consider the credibility of the witnesses. *See* Charles Alan Wright, Nancy King & Susan Klein, *Federal Practice and Procedure* § 553 (3d ed. 2004).

### B.      Defendant Dustin Morgan's Motion

Defendant Dustin Morgan first renews his motion for a judgment of acquittal, contending that the evidence presented at trial was insufficient to sustain a conviction against him on counts one and three, citing *United States v. Morrison*, 220 F. App'x 389 (6th Cir. 2007), as an example of such a case. Concerning count one, Morgan argues that the government failed to prove that he knew of an illegal conspiracy and intended to join. Instead, he submits, the evidence revealed that he was merely an employee of Breakthrough and was uninvolved with any of the alleged illegal activities there. Morgan further states that the items seized from his residence and safe deposit box do not prove that he knew of an illegal conspiracy at Breakthrough or participated in the conspiracy. Regarding count three, Morgan argues that he possessed his firearm legally and within

his legitimate role as a security guard at Breakthrough, submitting that the government failed to prove that the firearm was possessed to advance or promote the crime charged in count one.

Alternatively, Morgan moves for a new trial, stating that his case presents the kind of extraordinary circumstances warranting such relief because his conviction is based upon guilt by association and relation. He also alleges that permitting the introduction of the firearms, narcotics, and cash seized from Morgan's home and safe deposit box constituted substantial legal error because these items were irrelevant, presumably under Federal Rule of Evidence 401, and unduly prejudicial under Federal Rule of Evidence 403. Finally, Morgan argues that the proof presented at trial created an impermissible variance from the superseding indictment in the sense that it involved evidence of firearms seized from Morgan's residence, which had nothing to do with the crime charged in count three. Therefore, Morgan contends, he lacked notice as to which firearm formed the basis of the allegation in count three and was prejudiced because he was judged based upon this irrelevant evidence. He submits that this alleged variance is an error of law and presents a substantial basis for a new trial.

The government responds that the evidence presented at trial was sufficient to establish Morgan's knowledge of, intent to join, and participation in, the charged conspiracy and that he advanced or promoted this conspiracy by visibly possessing a firearm at Breakthrough. In support, the government cites Morgan's involvement with Breakthrough and observations while working there, the conduct of his relatives, and his

6

banking activities and statements during the conduct of these activities. The government submits that ample evidence was presented at trial to support the jury's verdict and that Morgan has not satisfied his weighty burdens under Rules 29 and 33. Further, the government argues that there was not a variance, and even assuming that there was a variance, it was a permissible one.

In his reply, Morgan contends that he was not employed by Breakthrough until November 2009, rebutting the government's allegation that he worked at Breakthrough from its inception. Morgan further submits that evidence of illegal activity or drug addiction by his wife, Heather Morgan, or defendants Sandra Kincaid and Wendi Henry, does not prove he was guilty of the charged offenses. Inasmuch as the government argues that Morgan turned a blind eye to his family's illegal activity, Morgan states that there was no proof that he was aware of any illegal prescriptions, this Court rejected a willful blindness jury instruction, and there was no evidence that he benefitted from Breakthrough's operations, except that he received a salary. Moreover, he argues that no evidence indicated that the money seized from the safe deposit box constituted proceeds from Breakthrough's illegal operations, and in any event, the box also belonged to his wife, who stored her earnings there. Morgan takes umbrage with the government's contention that he indicated his membership in a drug conspiracy when he stated in the presence of a bank employee that he was going to refer his mother, Sandra Kincaid, to the bank at which his safe deposit box was located because of the privacy the bank provided when he was accessing his box. Finally, Morgan reiterates that he worked as a security

7

guard at Breakthrough and that he should not automatically be implicated in criminal conduct simply by his relation to the guilty parties.

Morgan was charged in count one with conspiracy to distribute and possess with intent to distribute controlled substances. "To establish a drug conspiracy, the government must prove (1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999). As the Sixth Circuit found in *Morrison*, given the Court's subsequently discussed determinations as to the sufficiency of the evidence concerning Morgan's co-defendants and the agreement between them to violate drug laws, the Court finds that the dispositive issue is the sufficiency of evidence as to Morgan's knowledge of the conspiracy because, "were [Morgan's] knowledge of the conspiracy to be proven, proof of his intent to join and further the objectives of the conspiracy would easily follow, given his participation [through his work at Breakthrough]." *Morrison*, 220 F. App'x at 393. To this end, "proof of knowledge is satisfied by proof that the defendant knew the essential object of the conspiracy." *Id.* (citations and internal quotation marks omitted).

Knowledge can be proven through circumstantial evidence, but such evidence must be clear, not equivocal, to satisfy the government's burden of proving all elements beyond a reasonable doubt. *Id.* The underlying principle is, "conjecture and surmise regarding what a defendant may have intended or known is insufficient to support a conviction." *Id.* at 395 (citations and internal quotation marks omitted). The Sixth

8

Circuit found the evidence of knowledge in *Morrison* insufficient to sustain the defendant's conviction because, "[t]hough the totality of the evidence . . . admittedly shows that [the defendant] had knowledge of *some* illegal activity, what it fails to show is that [he] knew the purpose of all this activity centered around drugs." *Id.* (emphasis in original). Though sufficient evidence existed to conclude that the defendant knew he was involved with transporting something illegal, the government could not prove that he knew it was drugs, or specifically cocaine. *Id.*

*Morrison* is distinguishable from the present matter. Here, Morgan undoubtedly knew Breakthrough was involved in distributing controlled substances, as this was its very purpose. The question is whether he knew Breakthrough was illegally doing so. The government offered evidence that: (1) Morgan worked at Breakthrough full-time for at least a significant portion of its operation and visibly carried a firearm during this time; (2) Breakthrough accepted only cash and did not accept insurance; (3) while employed at Breakthrough, Morgan presented cards to customers listing their appointment time for the following month and collected their cash before the customer was seen by medical personnel or given a prescription by Sandra Kincaid; (4) the illegal and illegitimate nature of Breakthrough was obvious upon arrival; (5) Sandra Kincaid would ask customers in the waiting room if they needed their medications changed, and if they answered in the negative, she would provide them with a prescription; (6) Morgan's desk

9

was at the front of the office where he was in full view of the operation;[1] (7) illegal drug activities regularly took place in the parking lot, and yet Morgan, a security guard, did nothing about such activity; (8) Morgan witnessed a pharmacy contract with his signature as a representative of Breakthrough; and (9) a firearm was found at Morgan's work station.

In its totality, when this evidence is viewed in a light most favorable to the government, a rational trier of fact could find that Morgan had knowledge that Breakthrough was the means for executing a conspiracy to unlawfully distribute and possess with intent to distribute controlled substances. Given this agreement to violate the federal drug laws and Morgan's knowledge of the agreement, as well as his intent to join the conspiracy and participate in the conspiracy—as is evident from his visible possession of a firearm at Breakthrough and duties in terms of handing out appointment cards and collecting customers' cash before they had seen a medical provider or received a prescription from Sandra Kincaid—a rational trier of fact could find beyond a reasonable doubt that Morgan was guilty of the charged conspiracy count. Furthermore, a rational trier of fact could find beyond a reasonable doubt that Morgan was guilty of count three because evidence was presented that he visibly possessed a firearm at Breakthrough, thereby advancing or promoting what sufficient evidence indicated to be a conspiracy in which he was involved to generate cash by distributing controlled

---

[1] Morgan argues that the evidence showed that his office was at the back of the clinic. To be clear, this distinction is not dispositive of any aspect of his motion. Morgan undisputedly worked at Breakthrough and had a desk or office somewhere within its building.

10

substances.  Thus, the Court finds that Morgan is not entitled to a judgment of acquittal as to counts one and three.

As for Morgan's motion seeking a new trial pursuant to Federal Rule of Criminal Procedure 33(a), given the aforementioned evidence, the verdict was not against the manifest weight of the evidence, and this case does not present the sort of extraordinary circumstances in which the evidence preponderates heavily against the verdict. Therefore, the Court does not find that the interest of justice requires a new trial on this basis and declines to grant such.

Morgan also requests a new trial on the ground that "substantial legal error has occurred," in that the Court permitted the introduction of evidence seized from Morgan's residence and a safe deposit box belonging to he and his wife.  *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).  As the Court stated in ruling upon Morgan's motion in limine, this evidence was relevant because, although it did not by any means constitute conclusive evidence of criminal conduct, it made more probable Morgan's participation in the charged conspiracy and possession of a firearm in furtherance of such. Furthermore, Morgan had the opportunity through cross-examination of government witnesses, the submission of his own proof, and argument to distinguish this evidence from the crimes with which he was charged.  Consequently, the admission of this evidence was not unduly prejudicial to Morgan under Rule 403 of the Federal Rules of Evidence.  The Court thus finds that permitting the admission of this evidence did not constitute substantial legal error warranting a new trial.

11

Morgan further requests a new trial on the basis that the evidence presented by the government at trial impermissibly varied from the charges in the superseding indictment. More specifically, he argues that the government offered proof of firearms seized from places other than Breakthrough, such as his residence, and the introduction of such evidence not only went beyond the scope of the allegations in the superseding indictment, but affected Morgan's right to a fair trial.

"To obtain reversal of a conviction because of a variance between the indictment and the evidence produced at trial, a defendant must satisfy a two-prong test: (1) the variance must be demonstrated and (2) the variance must affect some substantial right of the defendant." *United States v. Budd*, 496 F.3d 517, 521–22 (6th Cir. 2007) (citations and internal quotation marks omitted). The Court agrees with the government that no variance occurred in this case. The government offered proof that Morgan visibly possessed a firearm during business hours at Breakthrough to protect the cash the business generated, which goes to the heart of count three. To the extent any evidence pertained to firearms or other items seized from areas away from Breakthrough but under Morgan's control, such evidence was permissibly offered as circumstantial proof of the crime charged in count three.

The Court also rejects Morgan's argument that the superseding indictment did not adequately inform him of the crime with which he was charged in count three, as it clearly informed him that he was being prosecuted for possessing a firearm during

12

business hours at Breakthrough in furtherance of alleged criminal activity there. Thus, a new trial is not warranted on this ground.

In sum, whether reviewed under the standard applicable to a Rule 29(c) motion or a Rule 33(a) motion, the Court finds that sufficient evidence was presented at trial that Morgan committed the crimes charged in counts one and three of the superseding indictment and that none of the other grounds advanced by Morgan justify a new trial under Rule 33(a).

### C. Defendant Wendi Henry's Motion

Defendant Wendi Henry moves for a judgment of acquittal pursuant to Rule 29,[2] and alternatively, a new trial pursuant to Rule 33. Henry was adjudged guilty of the conspiracy charged in count one, but she argues that the evidence presented at trial regarding her activities at Breakthrough—including that she handed out flyers for Breakthrough, worked as a receptionist, worked in the file room, and occasionally took patients' blood pressure—indicated that she was an employee and was insufficient to establish participation in a conspiracy. Henry adds that although John Bryant testified that she "brought him in" when he went to Breakthrough, he could not identify her in the courtroom [Doc. 195 p. 5]. Further, Henry submits that she was legitimately prescribed oxycodone by the medical personnel at Breakthrough and that there was no proof offered at trial that Henry controlled the patient files or took such files home, as alleged in the superseding indictment.

---

[2] Because Henry made a Rule 29 motion at the close of the government's proof, the Court construes the instant motion as a renewal of such pursuant to Rule 29(c).

13

As for Henry arranging for undercover agent Kelly Camp's appointment at Breakthrough, she alleges that this recorded conversation, in which Henry explains the check-in procedure, does not prove she engaged in criminal conduct and occurred after Henry's employ at Breakthrough had ended. Henry alleges that it was Shawn Thacker, not Henry, that provided false documentation to potential Breakthrough patients. In addition, she cites the lack of proof that she received any of the large amounts of cash revenue generated by Breakthrough, which she argues belies the notion that she was a member of any conspiracy. Concerning the pill bottles with the name "Dexter Eberhart" found at Henry's residence, she states that this individual spent a considerable amount of time with her, and thus some of his personal property was at her residence. Accordingly, Henry contends that her conviction was based upon inferences insufficient to establish that she was involved in a conspiracy and asks for either a judgment of acquittal or a new trial.

The government paints a different picture of the evidence presented at trial. It points out that Henry was recorded on multiple occasions discussing her involvement in the conspiracy, including her ability to place false documents in patient files without detection and set up appointments for individuals desiring prescriptions. Moreover, evidence was presented that her fee for such tasks was a quantity of Roxicodone pills. Henry was also taped discussing how the defendants took steps to avoid detection by law enforcement and her arrangement with Sandra Kincaid to swap certain pills for others. The tapes additionally revealed Henry discussing her personal drug trafficking and how

14

she kept records of such and that Sandra Kincaid trafficked in pills from her residence. In one audio recording, Henry could allegedly be heard asking for a Roxicodone pill, chopping up the pill, and snorting it.

The government adds that the evidence showed that Henry and Sandra Kincaid controlled the patient files and that Henry could get a pill seeker an illicit prescription in exchange for money and pills. In response to Henry's claim that no large sums of cash were found to indicate her involvement in a conspiracy, the government states that her involvement provided her with illegal narcotics to sell or use and that the evidence showed she had plans to open her own pain clinic and make millions of dollars. She eventually did so, opening Chilhowee Pain Clinic, but she did not abandon the charged conspiracy. Finally, the government notes that it is not required to prove an overt act as part of a drug conspiracy, emphasizing the bounty of evidence supporting its contention that Henry knew of the conspiracy and its aims, intended to join the conspiracy, and participated in furthering the conspiracy.

Henry is charged with conspiracy to distribute and possess with intent to distribute controlled substances. "To establish a drug conspiracy, the government must prove (1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *Layne*, 192 F.3d at 567. As with co-defendant Morgan, the Court finds that the dispositive issue is the sufficiency of evidence as to Henry's knowledge of the conspiracy because, "were [her] knowledge of the conspiracy to be proven, proof of [her] intent to join and further the objectives of the conspiracy

would easily follow, given [her] participation [in Breakthrough's operations]." *Morrison*, 220 F. App'x at 393. To this end, "proof of knowledge is satisfied by proof that the defendant knew the essential object of the conspiracy." *Id.* (citations and internal quotation marks omitted). Knowledge can be proven through circumstantial evidence, but such evidence must be clear, not equivocal, to satisfy the government's burden of proving all elements beyond a reasonable doubt. *Id.* The underlying principle is, "conjecture and surmise regarding what a defendant may have intended or known is insufficient to support a conviction." *Id.* at 395 (citations and internal quotation marks omitted).

At trial, the government presented recordings purportedly revealing Henry: (1) describing her ability to place false documents in patient files and set up appointments; (2) stating that her fee for such activities was a quantity of Roxicodone pills; (3) discussing the fact that she swapped pills with Sandra Kincaid and that Breakthrough took steps to avoid detection by law enforcement; (4) describing her personal drug trafficking and records of such, as well as Sandra Kincaid's drug trafficking; and (5) asking for a Roxicodone pill, chopping up the pill, and snorting it. Further, evidence was presented indicating that Henry and Sandra Kincaid controlled the patient files and that Henry could get a prospective patient a prescription in exchange for money and pills. Finally, Henry eventually opened her own pain clinic, and certain evidence showed that she planned to make large sums of money from this enterprise.

In its totality, when this evidence is viewed in a light most favorable to the government, a rational trier of fact could find that Henry had knowledge that Breakthrough was the means for executing a conspiracy to unlawfully distribute and possess with intent to distribute controlled substances. Given this agreement to violate the federal drug laws and Henry's knowledge of such, as well as her intent to join the conspiracy and participation in the conspiracy, as is evident from her employment at Breakthrough and activities in furtherance of its goals, a rational trier of fact could find beyond a reasonable doubt that Henry was guilty of the charged conspiracy count. Therefore, the Court finds Henry is not entitled to a judgment of acquittal under Rule 29(c).

Regarding Henry's motion seeking a new trial pursuant to Federal Rule of Criminal Procedure 33(a), given the aforementioned evidence, the verdict was not against the manifest weight of the evidence, and this case does not present the sort of extraordinary circumstances in which the evidence preponderates heavily against the verdict. Therefore, the Court does not find that the interest of justice requires a new trial and declines to grant such.

Whether the verdict is reviewed under the standard applicable to a Rule 29(c) motion or a Rule 33(a) motion, the Court finds that sufficient evidence was presented at trial that Henry committed the crime charged in count one.

### D.    Defendant Randy Kincaid's Motion

Defendant Randy Kincaid renews his motion for a judgment of acquittal pursuant to Rule 29(c).   In support, he submits that evidence of drug use and possession of narcotics with the intent to distribute does not establish the existence of a conspiracy, which necessarily requires an agreement.  Randy Kincaid also contends that no evidence was presented that he knew of any falsified medical documents, reviewed any patient files, or dealt with patient files in any fashion.  Moreover, no evidence was presented that he interacted with the medical personnel at Breakthrough or had any knowledge of their practices.  His mere presence at Breakthrough, he argues, does not establish a conspiracy with others to illegally distribute narcotics.  As for counts two and five, which charged Randy Kincaid with knowingly possessing a weapon in furtherance of a drug trafficking crime, Kincaid notes that he had a permit to possess the firearms he possessed while on the premises at Breakthrough and that this possession was for security purposes following a robbery.  He therefore submits that such possession was legal and designed to protect Breakthrough's employees and patients.  For these reasons, Randy Kincaid asks for a judgment of acquittal on counts one, two, and five.

The government responds in opposition that Randy Kincaid's only defense was that he deliberately ignored the obvious—that Breakthrough was an illegal operation.  In addition, he opened Breakthrough, along with Sandra Kincaid, his wife, who had previously worked at another pain clinic that was known as an illegal operation.  The evidence showed that Randy Kincaid handled the financial operation of Breakthrough,

18

which required patients to make an upfront cash payment before they saw a medical professional or were given a prescription by Sandra Kincaid. Randy Kincaid was constantly depositing large amounts of cash at banks and at one point inquired of a bank employee as to the amount he could deposit without being reported to a federal entity. He also used safe deposit boxes to store cash, and bank employees noticed his unusually frequent checks into such boxes. Upon his arrest, authorities found $686,444 and trafficking amounts of illegally obtained narcotics in such boxes, as well as multiple pads of blank prescriptions which neither Kincaid defendant had the authority to use.

Furthermore, Randy and Sandra Kincaid shared an office at Breakthrough in which illegal drugs not prescribed to either of them were discovered—supporting testimony from witnesses that they distributed drugs from the office. In fact, some evidence indicated that Randy Kincaid exchanged pills for sexual acts in this office. The search of this office also revealed pre-signed prescriptions. Additionally, Randy Kincaid was observed by witnesses visibly possessing a firearm at Breakthrough, and when the premises were searched, a firearm was found on his person. The government alleges that the firearms were possessed to intimidate anyone considering stealing from the conspiracy.

Evidence was also presented indicating that Randy Kincaid approached Keith Adkins about expanding the conspiracy, asking Adkins to drive to Florida to obtain narcotics. Lastly, a search of the Kincaid residence revealed prescription bottles belonging to Randy Kincaid, as well as other Breakthrough customers. Nearly every area

of the residence contained narcotics, and some were not prescribed to either Kincaid defendant. Multiple firearms, pill crushers, razor blades, and straws were also discovered during the search. In sum, the government submits that Randy Kincaid was fully aware of the illegal nature of the Breakthrough conspiracy and intended to capitalize on the addiction of others.

In count one, Randy Kincaid is charged with conspiracy to distribute and possess with intent to distribute controlled substances. "To establish a drug conspiracy, the government must prove (1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *Layne*, 192 F.3d at 567. Because Randy Kincaid's defense was essentially that there was no proof he was aware of Breakthrough's illegal nature, the dispositive issue is the sufficiency of the evidence as to his knowledge of the conspiracy because, "were [his] knowledge of the conspiracy to be proven, proof of [his] intent to join and further the objectives of the conspiracy would easily follow, given [his] participation [in Breakthrough's founding and operation]." *Morrison*, 220 F. App'x at 393. To this end, "proof of knowledge is satisfied by proof that the defendant knew the essential object of the conspiracy." *Id.* (citations and internal quotation marks omitted). Knowledge can be proven through circumstantial evidence, but such evidence must be clear, not equivocal, to satisfy the government's burden of proving all elements beyond a reasonable doubt. *Id.* The underlying principle is, "conjecture and surmise regarding what a defendant may have intended or known is

20

insufficient to support a conviction." *Id.* at 395 (citations and internal quotation marks omitted).

The government presented a plethora of evidence against Randy Kincaid, as previously chronicled. This evidence included that: (1) Kincaid co-founded Breakthrough after his wife left her employ with a previous illegal pain clinic; (2) he handled the finances for Breakthrough, routinely depositing large amounts of cash and seemingly inquiring as to how to avoid federal reporting requirements; (3) upon search, his bank deposit boxes contained $686,444, trafficking amounts of illegally obtained narcotics, and multiple pads of blank prescriptions which neither he nor Sandra Kincaid had permission to use; (4) he used an office in which drugs were distributed while he was present; (5) a witness testified that he exchanged drugs for sexual acts; (6) his office contained pre-signed prescriptions; (7) he was observed by multiple witnesses carrying a firearm and was found to be carrying one when Breakthrough was searched; (8) he approached an individual about driving to Florida to obtain drugs; and (9) a search of he and Sandra Kincaid's residence revealed prescription bottles belonging to Randy Kincaid, as well as other Breakthrough customers, narcotics that were not prescribed to either Kincaid defendant, multiple firearms, pill crushers, razor blades, and straws.

In its totality, when this evidence is viewed in a light most favorable to the government, a rational trier of fact could find that Randy Kincaid knew that Breakthrough was the means for executing a conspiracy to unlawfully distribute and possess with intent to distribute controlled substances. Given this agreement to violate

the federal drug laws and Kincaid's knowledge of such, as well as his intent to join the conspiracy and participation in the conspiracy—as is evident from the fact that he co-founded Breakthrough, handled its finances, distributed pills, and visibly possessed a firearm—a rational trier of fact could find beyond a reasonable doubt that Kincaid was guilty of count one.

Furthermore, a rational trier of fact could find beyond a reasonable doubt that Randy Kincaid was guilty of count two because evidence was presented that he visibly possessed a firearm at Breakthrough and that he was in possession of a firearm when Breakthrough was searched, thereby advancing or promoting what sufficient evidence indicated to be a conspiracy in which he was involved.

Count five charges Kincaid with knowingly possessing a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely count four, which charged both Kincaids with, aided and abetted by one another, knowingly or intentionally, and without authority, possessing with intent to distribute controlled substances on December 14, 2010, the day Breakthrough was searched. Given the trafficking quantity of drugs found in Randy Kincaid's office, safe deposit boxes, and residence, as well as the firearm on his person when Breakthrough was searched and the firearms near the drugs in his residence, the Court finds that a rational trier of fact could find beyond a reasonable doubt that he was guilty of count five. In summary, the Court

finds that Randy Kincaid is not entitled to a judgment of acquittal as to counts one, two, and five and denies his Rule 29(c) motion.[3]

### E.    Defendant Sandra Kincaid's Motion

Defendant Sandra Kincaid renews her motion for a judgment of acquittal, and alternatively moves the Court for a new trial, as to counts one, four, and six.  Concerning count one, Kincaid contends that the government failed to prove the existence of an agreement to violate the federal drug laws, arguing that the allegations in the superseding indictment—that Kincaid examined patients and issued prescriptions as a party to an agreement with others to do so through Breakthrough—were not proven beyond a reasonable doubt.  In support, she states that medical professionals were employed by Breakthrough and present throughout its operation and that none of these professionals were prosecuted or testified that any defendant directed them as to the prescription or treatment plan for a Breakthrough patient.  Dr. Deborah Thomas was the supervising physician at Breakthrough, and Sandra Kincaid submits that the trial testimony portrayed Dr. Thomas as a conscientious physician, noting that Dr. Thomas has never been disciplined by the state medical examiners or charged with a crime arising from her medical career.  Kincaid further alleges that no credible evidence was offered showing that any prescription issued from Breakthrough was not issued at the direction and with the approval of a medical professional.

---

[3] It is somewhat unclear whether Randy Kincaid challenges his conviction as to each count, or merely counts one, two, and five, which are the only counts addressed in his motion.  In any event, the Court finds that sufficient evidence was presented on each count to sustain his convictions.

23

Sandra Kincaid submits that only one witness stated that she saw Kincaid sign a prescription and could only say for sure that Kincaid wrote on the prescription. An allegedly forged prescription was provided to the government by an informant and bore the purported signature of Dr. Thomas. This signature, according to Kincaid, is indistinguishable from Dr. Thomas's signature, and the government did not offer a handwriting expert to testify otherwise. In addition, Kincaid states, after months of investigation, the government was only able to obtain a search warrant for fifty-five files out of approximately one thousand, and eleven of these files were for dismissed patients. Moreover, many witnesses who had been Breakthrough patients admitted that their aim was to deceive Breakthrough with their medical paperwork, and at the time, there was no prohibition against patients submitting their own medical records to facilities like Breakthrough. On top of this intentional documentary deception, the government's expert physician admitted that it is difficult to tell when a patient is lying about his or her pain.

Kincaid additionally notes that it would have been the doctor's duty to review the prescriptions written by any lower-level medical professionals, rather than that of a lay person owner. She points out that there was limited testimony concerning her possession and exchange of narcotics and that this testimony came from individuals with limited credibility. Moreover, the testifying pharmacists stated that they filled prescriptions from Breakthrough without filing any complaints concerning Breakthrough's medical staff.

Kincaid further takes issue with the testimony of Tim Black, the only Breakthrough medical professional to testify.

Regarding the money laundering conspiracy charge in count six, Sandra Kincaid first notes that without a conviction on the underlying drug conspiracy charge, there cannot be a conviction for conspiracy to commit money laundering. She adds that Breakthrough was searched, and ceased operations, on December 14, 2010, emphasizing that this occurred prior to the deadline for filing a tax return for 2010. Therefore, the government could not produce evidence as to the amount of income from Breakthrough that was concealed, if any, for 2010, which accounts for approximately two-thirds of the time Breakthrough was in operation.

The government responds that the evidence presented at trial overwhelming established Sandra Kincaid's guilt on each charged count, alleging that Kincaid was the architect of a family conspiracy and that she laundered the money it generated. It argues she opened and operated Breakthrough with her husband after working at another illegal pain clinic. Kincaid was also a customer of Breakthrough and frequently swapped pills with defendant Henry and Heather Morgan, the wife of defendant Morgan. At trial, the evidence indicated that Kincaid was very concerned with the patient files and did not want the medical professionals to have access to them. In fact, Kincaid would not allow such access except for when the professional was about to see the patient, and Kincaid was the sole reviewer of patients' documents to determine if the patient had sufficient documentation to be examined by the medical professionals. According to the

government, she was primarily concerned with ensuring that the records did not appear to be blatantly falsified. Further, the government notes, Kincaid dodged and thwarted law enforcement's efforts to obtain records and directed that the medical staff never call law enforcement concerning patients' commission of drug crimes and direct all calls from law enforcement or pharmacists to Kincaid.

Witnesses testified that Kincaid would walk into the waiting room at Breakthrough and ask if anyone needed to see a doctor, presumably to increase his or her medication. Kincaid would then present any patients who did not want to see a doctor with a prescription identical to the one they received the previous month. Many patients saw Kincaid write prescriptions, although only one could definitively testify that Kincaid forged the signature on the prescription.

An audio tape was presented at trial in which Sandra Kincaid mentioned exchanging stolen televisions for, as she called them, "Roxies," and discussed individuals that she planned to dismiss from Breakthrough for bringing too much attention upon it by being arrested. Defendant Henry was also recorded discussing Kincaid's paranoia concerning detection by law enforcement and that Kincaid had remarked that Kelly Camp, who was at that time a customer of Breakthrough while acting in an undercover role, had on "cop shoes" [Doc. 208 p. 6]. Notably, the documents Camp provided on his visits to Breakthrough were falsified, and the information he provided was insufficient to justify a prescription. Yet, Camp received a prescription for narcotics on each occasion.

Defendant Henry was also recorded discussing Kincaid's personal drug trafficking, noting that Kincaid limited such trafficking to trusted individuals because she was concerned that law enforcement was watching her. Other witnesses testified that Kincaid engaged in drug transactions with them, and one noted that Kincaid put pills in her mouth at Breakthrough when she was exhibiting withdrawal symptoms. Moreover, Kincaid's drug trafficking is corroborated by the aforementioned drugs found in the safe deposit boxes, residence, and office of Sandra and Randy Kincaid, as well as the drug use paraphernalia found in their residence. Many of these prescription bottles were not prescribed to Sandra or Randy Kincaid. This collection of narcotics was enormous and evinced that the drugs were for distribution. Notably, Breakthrough operated unusually as a medical facility in that it only accepted cash, and customers were required to pay in advance of the visit. Like Randy Kincaid, Sandra made regular visits to their safe deposit boxes, which contained over $600,000 in Breakthrough proceeds and illegally obtained narcotics.

The government adds that several of Sandra Kincaid's arguments are irrelevant to Kincaid's guilt or innocence, including whether other medical professionals were charged or testified at trial, whether local pharmacists filled Breakthrough-issued prescriptions or reported Breakthrough, and the fraction of total files that the government was permitted to seize and the circumstances surrounding some of the files. All in all, the government argues, the evidence amply showed that Sandra Kincaid was the originator of the charged conspiracy and associated crimes.

In count one, Sandra Kincaid is charged with conspiracy to distribute and possess with intent to distribute controlled substances. "To establish a drug conspiracy, the government must prove (1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *Layne*, 192 F.3d at 567. Sandra and Randy Kincaid admittedly agreed to start and operate Breakthrough, and therefore, if they knew of its illegality, the requisite elements of a drug conspiracy are satisfied because they would have agreed to violate the law by deciding to open and operate Breakthrough. Further, they intended to join and participate in any conspiracy by operating the facility. Knowledge can be proven through circumstantial evidence, but such evidence must be clear, not equivocal, to satisfy the government's burden of proving all elements beyond a reasonable doubt. *Id.*

The government presented sufficient evidence that Sandra Kincaid knew that Breakthrough's operations and procedures were illegal. To this end, the government offered evidence that Sandra Kincaid: (1) was the originator of Breakthrough and its operational procedures, having worked in a similar clinic, and opened Breakthrough with co-defendant Randy Kincaid; (2) guarded the patient files from medical provider oversight and was the sole arbiter of whether a patient had sufficient documentation to see the medical personnel, a process in which she ensured that such documentation was not too blatantly falsified; (3) directed that the medical staff not report patients for suspected drug crimes and refer all calls from law enforcement or pharmacies to her; (4) would walk into Breakthrough's waiting room, ask who needed to see a medical

28

professional, and issue prescriptions for those who answered in the negative; (5) wrote on prescriptions and signed one; (6) was recorded discussing exchanging stolen televisions for "Roxies," the colloquial term for Roxicodone pills, and dismissing individuals from Breakthrough for bringing too much attention upon it; (7) was concerned with Kelly Camp, an undercover agent wearing, as Kincaid termed them, "cop shoes," according to defendant Henry; (8) personally trafficked in narcotics, according to a recording of Henry; (9) put pills in the mouth of a Breakthrough patient who was suffering withdrawals; (10) along with Randy Kincaid, had an enormous amount of narcotics in their safe deposit boxes, residence, and office, and many of the drugs were not prescribed to either of them; and (11) made regular visits to safe deposit boxes that were later determined to contain over $600,000 and a significant quantity of illegally obtained narcotics. Additionally, though Kelly Camp had insufficient paperwork to elicit a prescription, Breakthrough issued him a prescription during each of his visits. And finally, Breakthrough accepted only cash and required payment in advance of the patient's visit.

In its totality, when this evidence is viewed in a light most favorable to the government, a rational trier of fact could find that Sandra Kincaid knew that Breakthrough was the means for executing a conspiracy involving her co-defendants to unlawfully distribute and possess with the intent to distribute controlled substances. Given this agreement to violate the federal drug laws and Kincaid's knowledge of such, as well as her intent to join the conspiracy and participation in the conspiracy—as is

evident from the fact that she co-founded Breakthrough, distributed prescriptions there, supervised and reviewed its medical records, dealt with outside entities on its behalf, and at least in part administered its finances—a rational trier of fact could find beyond a reasonable doubt that Kincaid was guilty of count one.

Furthermore, a rational trier of fact could find beyond a reasonable doubt that she was guilty of count four, which charges both Kincaids with, aided and abetted by one another, knowingly or intentionally, and without authority, possessing with intent to distribute controlled substances on December 14, 2010, the day Breakthrough was searched. Given the trafficking quantity of drugs found in Sandra Kincaid's office, safe deposit boxes, and residence, the Court finds that a rational trier of fact could find beyond a reasonable doubt that she was guilty of count four.

Lastly, as to count six, evidence was presented that Sandra Kincaid designed, or at least co-designed, Breakthrough's operational plan, and like Randy Kincaid, made trips to access safe deposit boxes that were discovered to contain over $600,000. Yet, Kincaid argues that when Breakthrough was shut down, annual tax returns were not yet due for 2010, and thus it cannot be said what amount of income, if any, the Kincaids failed to report to the Internal Revenue Service. However, there was evidence produced at trial concerning the income generated by Breakthrough in 2009.

"To establish a money laundering conspiracy, the government must prove (1) that two or more persons conspired to commit the crime of money laundering, and (2) that the defendant knowingly and voluntarily joined the conspiracy." *United States v. Prince*, 618 F.3d 551, 553–54 (6th Cir. 2010). The Court finds that given the aforementioned evidence, a rational trier of fact could find beyond a reasonable doubt that Sandra Kincaid was guilty of these two elements, and therefore the crime charged in count six, even irrespective of whether tax return forms were yet due for 2010.

Regarding Sandra Kincaid's alternative motion seeking a new trial pursuant to Federal Rule of Criminal Procedure 33(a), given the aforementioned evidence, the verdict was not against the manifest weight of the evidence, and this case does not present the sort of extraordinary circumstances in which the evidence preponderates heavily against the verdict. Therefore, the Court does not find that the interest of justice requires a new trial and declines to grant such under Rule 33(a).

In summary, whether the verdict is reviewed under the standard applicable to a Rule 29(c) motion or a Rule 33(a) motion, the Court finds that sufficient evidence was presented at trial that Sandra Kincaid committed the crimes charged in counts one, four, and six of the superseding indictment.

## III.    Conclusion

For the reasons explained herein, the Court hereby **DENIES** the Motion by the Defendant Dustin Morgan for Judgment of Acquittal, or in the Alternative for a New Trial [Doc. 194], the Motion by Wendi Henry for Judgment of Acquittal or in the

31

Alternative for a New Trial [Doc. 195], the Motion for Judgment of Acquittal by Randy Kincaid [Doc. 197], and the Motion for Judgment of Acquittal or, in the Alternative, for a New Trial by Sandra Kincaid [Doc. 206].

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE